McIlvaine, J.
The constitutionality of the act of April 6, 1880, “ To authorize certain townships to build railroads and to lease or operate the same ” (77 Ohio L. 119), is the only subject considered in this case.
The substance of this statute is to authorize Beaver township, Noble county, to procure the right of way and construct a line of railroad with all proper appendages, and also, if deemed necessary, a line of telegraph, between termini to be designated within said, township, not to exceed seven miles in length, at an expenditure of money not to exceed $20,000, to be raised by taxation, and “on the final completion of any line of railway constructed under the provisions of this act, the board of trustees shall have power to lease Ihe same to any person or persons or company as (who) will conform to the terms and conditions which shall be fixed and provided by the trustees of the township.” No other or further provision is made for using or operating the road. Nor is the purview of the act as above stated materially modified by any other provision. It may, however, be mentioned, that the statute requires the question of constructing the road to be submitted to a vote of the electors of the township; that the money may be borrowed, for which bonds secured by a mortgage on the road shall be executed; and that the construction of the road and the expenditure of the money shall be placed under the control of a board of trustees to be appointed by the court of common pleas of the county.
Whén viewed in the abstract, it is difficult to see in what manner, within the contemplation of the legislature, the proposed road could become of such public utility as to justify resort to taxation ; but when applied to the subject-matter under the existing circumstances, the legislative intent becomes quite apparent. Beaver township, Noble county, the only township to which the provisions of the act were intended to apply, is a sparsely settled agricultural district, with a population of 1,684, without railroad facilities either within’ or bordering *95 upon it. "Without railroad connections, it is quite certain, that the proposed improvement would be utterly useless; hence, in view of this fact, the trustees of the township designated the location of the proposed road as follows: “ running through said township from the point that the Somerset Railway intersects the east line of said township and terminating where the Belair, Beaver Yalley & Shawnee Railway intersects the west line of said township.” Neither of the connecting railways here mentioned is in existence, but only in contemplation,—the former having been authorized to be built by Somerset township, Belmont county, by an act of the legislature, similar to the one now under consideration, passed on the 18th of March, 1880. So that it is quite evident that the legislative intent, as well as that of the trustees of Beaver township, was to make the proposed road a link in a more extended route or line of railway. The same intent is manifested in the fact, that no provision was made for the operating of the proposed road by the township; but power only was given to lease the same on completion, to any person or persons or company which would conform to the terms and conditions which the trustees should prescribe; and in the event that the road would not be completed with the expenditure of money authorized, a scheme for its sale was provided by the act by foreclosing the mortgage given to secure the bonds ; so that the road, after the expenditure of $20,000, might pass into the hands of another “ person or persons or company.” Otherwise, why mortgage the road, when the faith of the township, by the terms of the statute, was pledged to the payment of the bonds; which pledge included not only all the property of the township, but all taxable property within the township % That a sale under the mortgage would be the probable result, might well be anticipated from the fact that the maximum sum authorized to be expended, as we know from the history of railroad building in this state, would not be sufficient to iron the track, to say nothing about the expense of the right of way, the grading, the tying or the equipping of the road. True, it may be said, this case is submitted on the pleadings, and the averment of the petition that the means pro *96 vided are insufficient to build the road and pay for the right of way, is met by an averment in the answer, that “ the sum of $20,000 will, in fact, be sufficient to construct the line of road as contemplated and provided by said act.” This averment in the answer does not cover the allegations of the petition; and besides, the main question is, what was contemplated and provided by the act ? Was it contemplated that a complete and independent railroad should be constructed by the township % We think not, and therefore, without speculating as to the manner in which it was intended that the result should be accomplished, it is quite evident, to our minds, that the legislative intent, as well as that of the trustees of the township, was that the proposed road should in some manner and by some means become consolidated or connected with other roads, as part of a more extended line of railway, in order to make it at all subservient to the public welfare, and that in no other way could it be made of public utility.
The purpose and effect of the statute is to unite the means and credit of the township with those of other parties in order to promote a common enterprise, to wit: the construction of a continuous line of railway, which could not be accomplished without such combination of interests.
Such being the scheme and operation of this statute, it is clearly in violation of section 6, article 8, of the constitution, which provides : “ The general assembly shall never authorize any county, city, town or township, by vote of its citizens or otherwise, to become a stockholder in any joint-stock company, corporation or association whatever, or to raise money for, or loan its credit to, or in aid of any such company, corporation or association.” In relation to this section, I cannot do better than adopt the language of C. J. Scott, in Walker v. Cincinnati, 21 Ohio St. 54. He said, “ The mischief which this section interdicts is a business partnership between a municipality or subdivision of the state and individuals or private corporations or associations. It forbids the xmion of public and primate capital or credit in .any enterprise whatever. In no project originated by individuals, whether associated or otherwise, with a view to gain, are the municipal bodies named permitted to participate in *97 such manner as to incur pecuniary expense or liability. They may neither become stockholders, nor furnish money or credit for the benefit of parties interested therein. Though joint-stock companies, corporations and associations only are named, we do not doubt that the reason of the prohibition would render it applicable to the case of a single individual. The evil would be the same, whether the public suffered from the cupidity of a single person or from several persons associated together.” And 1 will add, that it makes no difference whether the scheme for the union of public and private money or credit originates with the party or parties representing the public or the private interests. In short, the thing prohibited is the combination in any form whatever of the public funds or credit of any county, city, town or township with the capital of any other person, whether corporated or unincorporated, for the purpose of promoting'any enterprise whatever.
From these views it is plain that the statute before us manifests an intent to do that indirectly which, if done directly, would constitute a palpable infraction of the constitution, for which reason it must be declared inoperative and void.
In conclusion I may say, that it has been sought to maintain the validity of the statute under consideration upon the principles decided in the case of Walker v. Cincinnati, 21 Ohio St. 14. But as we have shown the scheme of this statute to be essentially different from the one considered in that case, it is not necessary for us to review the doctrines of that decision. On the other hand, we conceive the principles involved in this case to be substantially similar to those in the case of Taylor v. Commissioners of Ross Co., 23 Ohio St. 22, in which the statute was held to be unconstitutional, for reasons entirely satisfactory to the court then and now. "We are content to follow the doctrine of the latter case in disposing of the case before us. And while we regret the necessity of differing with the legislative department of the government in respect to the constitutionality of one of their enactments, we will express the hope that in the future, as in the past, but few occasions may arise for such difference.

Perpetual injunction, granted as prayed for.